IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00200-PAB-MEH

JOE BROWN,

      Plaintiff,

v.

JACK CANTRELL, Director of UNICOR, and
HARLEY LAPPIN, Director of the Bureau of Prisons,

      Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendants' Motion to Dismiss [filed November 2, 2011; docket #49].

In accordance with 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred

to this Court for recommendation [docket #50]. The motion is fully briefed, and oral argument

would not materially assist the Court in its adjudication. Based on the record contained herein, the

Court RECOMMENDS that Defendants' motion be **granted in part and denied in part**.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

**BACKGROUND**

Plaintiff, proceeding *pro se*, initiated this action on January 26, 2011.  (Docket #1.)  Upon order of the Court, Plaintiff filed an Amended Complaint on May 2, 2011 to cure deficiencies noted by the Court in its initial review.  (Docket #9.)  As set forth more fully below, Plaintiff filed the operative Second Amended Complaint on October 18, 2011, alleging generally that he suffered discrimination in violation of the Americans with Disabilities Act and the Rehabilitation Act. (Docket #47.)  In addition to money damages, Plaintiff seeks reinstatement to his job at UNICOR. (*Id.* at 24.)

**I.      Facts**

The following are factual allegations made by the Plaintiff in his Second Amended Complaint and offered by Defendants for jurisdictional analysis.  These allegations are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

Plaintiff is an inmate currently incarcerated at the Federal Correctional Institution ("FCI") Englewood.  (Docket #47 at 2.)  Prior to his arrival at FCI Englewood, Plaintiff worked at the UNICOR Textiles Factory in FCI Waseca.  (*Id*. at 9.)  Plaintiff received a positive work performance evaluation for the time period between October 2007 and March 31, 2008.  (*Id*. at 26.)  Plaintiff was transferred to FCI Englewood in October 2008 where he continued to work at UNICOR until he was laid off on August 27, 2009.  (*Id*. at 31.)

On February 23, 2010, Plaintiff filed a BP-8 informal complaint form claiming he was laid off due to a disability that affects his right hand.  (Docket #47 at 9.)  According to the response to the informal complaint written by Defendant Cantrell, Plaintiff was removed from his job because

other inmates were observed performing his work.  (*Id*. at 32.)  The response also indicates Plaintiff

was offered another position to work on a sewing machine, but he declined.  (*Id*.)  Plaintiff filed a

BP-9 form[2] opposing the response and requesting relief from the Warden, claiming that he was never

offered another position, but told he would be called in when another position became available.

(*Id*. at 30-31.)  The BP-9 purportedly was denied because it was not filed within 20 days, but the

Plaintiff denies the untimeliness of the BP-9 filing.  (*See* docket #54 at 7.)  According to a BP-11

form, Plaintiff purportedly had filed a BP-10 appeal to the Regional Director; however, he provides

no copy of that appeal (*see* docket #47 at 35).  Nevertheless, on May 18, 2010, Plaintiff filed a BP-

11 appeal to the Central Office (*id.*), which was eventually denied on December 16, 2010.  (*Id*. at

42.)  The Central Office concluded, in pertinent part,

> Our review reveals the Warden and Regional Director adequately responded to the
> issues you raised in your appeal. As the Warden explained, you were terminated
> from your position because you were not meeting production standards, not because
> of a disability. You were offered a different position which you declined. We defer
> to the discretion of the local staff, as the decision was a reasonable exercise of sound
> correctional judgment.

(*Id.*)  Meanwhile, on November 18, 2010, Plaintiff allegedly wrote a letter to the Equal Employment

Opportunity Commission ("EEOC") about his claim of alleged discrimination.  (*Id.* at 39-40.)  He

asserts he never received a response from the EEOC.  (*Id.*)

---

[2] It is unclear from the record on what date Plaintiff filed his BP-9 form.  There is no date on the BP-9, and the Plaintiff alleges he filed it on "February 30, 2010."  *See* docket #47 at 9.

## II.    Procedural History

On January 21, 2011, Plaintiff initiated this suit by filing a complaint against the Bureau of Prisons, FCI Englewood, Mr. Shortner and Mr. Hendricks.  (Docket #1.)  In his complaint, Plaintiff asserts claims pursuant to the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*  (*Id.*)  Claims One and Two assert violations of the Rehabilitation Act, and Claim Three asserts a violation of the ADA.  (*Id.*)  On August 8, 2011, this Court held a Scheduling/Status Conference at which defense counsel raised the issue of the proper defendant to sue under the ADA and the Rehabilitation Act.  (Docket #32.)  Based upon this conversation, Plaintiff agreed to file a motion for leave to amend his complaint to add the proper defendants for his claims.  (*Id.*)  Plaintiff filed a proposed Second Amended Complaint on October 18, 2011, naming as defendants only Harley Lappin and Jack Cantrell.  (Docket #47.)  In addition to money damages, Plaintiff seeks reinstatement to his job with UNICOR.  (*Id.*)  Having no objection from the Defendants, the Court granted Plaintiff leave to file the Second Amended Complaint.  (Docket #51.)

Defendants filed the present motion to dismiss Plaintiff's claims arguing that Plaintiff failed to exhaust his available administrative remedies, and that the federal government has not waived sovereign immunity for the claim brought pursuant to the ADA.  (Docket #49.)  Defendants do not dispute that Plaintiff exhausted all of the internal administrative remedies through the BOP; however, Defendants assert that Plaintiff must also exhaust the remedies provided by the Department of Justice ("DOJ") for disability discrimination claims.  (*Id.*)  Defendants further assert that the Complaint does not allege individual capacity claims against either defendant, or personal participation in the alleged discrimination.  (*Id.*)  Defendants argue that individuals cannot be sued

4

pursuant to the Rehabilitation Act or the ADA, and that neither Defendant was personally served with the summons and complaint. (*Id.*) Therefore, Defendants do not construe the Complaint as alleging individual capacity claims, and are not responding in their individual capacities but instead allege Plaintiff's claims are against the BOP and UNICOR, a statutorily created government corporation. (*Id.*)

Plaintiff filed a response on November 28, 2011, arguing that 28 U.S.C. § 1346(b) waives sovereign immunity. (Docket #54.) Plaintiff further contends that he did exhaust all of his administrative remedies by complying with the BOP's grievance procedures. (*Id.* at 3-4.) In their reply, filed December 12, 2011, Defendants reiterate their arguments and assert that Plaintiff failed to address the issue regarding the United States' sovereign immunity. (Docket #58.)

## LEGAL STANDARD

### I.     Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction

5

is on the party asserting jurisdiction.  *See Basso*, 495 F.2d at 909.  Accordingly, Plaintiff in this case

bears the burden of establishing that this Court has jurisdiction to hear his claims.  Further, under

a 12(b)(1) motion, "a court has 'wide discretion to allow affidavits, other documents, and a limited

evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colorado Interstate Gas Co.*,

271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.

1995)).  In such an instance, "a court's reference to evidence outside the pleadings does not convert

the motion into a Rule 56 motion."  *Id.*

## II.    Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129

S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow

"the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.  Twombly* requires a two prong analysis.  First, a court must identify "the allegations in the

complaint that are not entitled to the assumption of truth," that is, those allegations which are legal

conclusions, bare assertions, or merely conclusory. *Id.* at 1949-51.  Second, the Court must consider

the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951.

If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at

1950.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that

they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged

their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, – F.3d – ,

2012 WL 364058, at *2 (10th Cir. Feb. 6, 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)).  "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011).  Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim.  *Khalik*, 2012 WL 364058 at *2.

### III.    Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers.  [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Id*.  A *sua sponte* dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

## ANALYSIS

Before commencing with its analysis, the Court notes that Plaintiff's Second Amended Complaint is not clear as to whether he brings his claims pursuant solely to the ADA's and Rehabilitation Act's protections in an employment setting or whether he raises claims pursuant to the public accommodations protections of the statutes.  Further, Plaintiff does not specify whether his claims are brought against Defendants in their individual or official capacities, or both.  Moreover, Plaintiff's factual allegations may plausibly state an equal protection claim pursuant to the Fifth Amendment.  Therefore, construing Plaintiff's pleading liberally, the Court will proceed with an analysis of all possible claims.

"When a defendant seeks dismissal under Rule 12(b)(1) and 12(b)(6) in the alternative, the court must decide first the 12(b)(1) motion for the 12(b)(6) challenge would be moot if the court lacked subject matter jurisdiction." *Mounkes v. Conklin,* 922 F. Supp. 1501, 1506 (D. Kan.1996) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)).

### I.      Sovereign Immunity

Defendants argue that the Court lacks subject matter jurisdiction over the ADA claim because the United States has not waived sovereign immunity.[3]  "The United States, a sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  Furthermore, "[t]he United States consents to be sued only when Congress unequivocally expresses in statutory texts its intention to waive the United States' sovereign immunity." *Kimboko*

---

[3]Defendants do not specifically raise the defense of sovereign immunity for the Rehabilitation Act claim; however, a court may raise the issue of subject matter jurisdiction *sua sponte* at any time during the course of the proceedings. *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1252 (10th Cir. 1988).

*v. United States*, 26 F. App'x 817, 819 (10th Cir. 2001) (quoting *In re Talbot*, 124 F.3d 1201, 1205 (10th Cir. 1997)).  A waiver of sovereign immunity must be unequivocally expressed and cannot be implied.  *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)).

Thus, to the extent Plaintiff seeks to bring his claims against Defendants in their official capacities, these claims may fail for lack of subject matter jurisdiction.  "When an action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United States."  *Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989).  Absent an explicit waiver of sovereign immunity, the United States is generally immune from suit.  *Mitchell*, 445 U.S. at 538.  This "immunity is jurisdictional in nature," *FDIC v. Meyer*, 510 U.S. 471, 475 (1994), and extends to government agencies and employees.  *Kyler v. Everson*, 442 F.3d 1251, 1252-53 (10th Cir. 2006).

Plaintiff provides nothing demonstrating that the United States has waived its sovereign immunity in this case.  In his response brief, Plaintiff refers to the waiver of sovereign immunity in the Federal Torts Claims Act ("FTCA").  While Plaintiff correctly points out that 28 U.S.C. 1346(b) permits plaintiffs to sue government officials in their official capacity, Plaintiff's reliance on this waiver of sovereign immunity is misplaced because Plaintiff does not bring a FTCA claim against either Defendant.

Instead, with respect to the Plaintiff's ADA employment claim (Title I), the statute's definition of an employer specifically excludes the United States and any corporation wholly owned by the United States, which would include the BOP and UNICOR.  42 U.S.C. § 12111(5)(B)(I).

Further, the ADA's section concerning public accommodations (Title II) does not include the federal government in its definition of a "public entity." 42 U.S.C. § 12131(1).  *See Hurtado v. Reno*, 34 F. Supp. 2d 1261, 1264 (D. Colo. 1999) (citing 42 U.S.C. § 12131(1), court found the federal detention center was not liable under the ADA); *see also Sarvis v. United States*, 234 F.3d 1262, 2000 WL 1568230, at *2 (2d Cir. Oct. 19, 2000) (based upon the definition in 42 U.S.C. § 12131(1), the court held that "Title II of the ADA is not applicable to the federal government") (quoting *Cellular Phone Taskforce v. F.C.C.*, 217 F.3d 72, 73 (2d Cir. 2000)).  Therefore, this Court recommends that the District Court grant Defendants' motion to dismiss any claims brought against Defendants in their official capacities pursuant to Title I or Title II of the ADA for lack of subject matter jurisdiction.

With respect to Plaintiff's Rehabilitation Act claim,[4] claims for monetary damages for alleged discrimination under any program or activity against the Bureau of Prisons or its officials are shielded by sovereign immunity.[5]  *See Moore v. Cooksey*, 242 F.3d 389, 2000 WL 1838274, at *1-*2 (10th Cir. Dec. 14, 2000) (citing *Lane v. Pena*, 518 U.S. 187, 192-93 (1996)); *see also Chamberlain v. Chandler*, 344 F. App'x 911, 913 (5th Cir. Sept. 15, 2009) (same).  Thus, this Court recommends that the District Court grant Defendants' motion to dismiss any claims for monetary

---

[4]In his Second Amended Complaint, the Plaintiff identifies Claim One as a claim pursuant to 29 U.S.C. § 701 et seq. and Claim Two as a claim pursuant to 29 U.S.C. § 705. However, section 701 simply states the policy and purpose of the Rehabilitation Act, and section 705 provides definitions of terms used in the statute.  Neither section provides a private right of action.  Therefore, the Court will construe Plaintiff's Second Amended Complaint as bringing one claim pursuant to § 504 of the Rehabilitation Act against the Defendants.

[5]An exception to this rule is in a case where the federal agency is acting as a "federal provider of financial assistance."  *See Lane*, 518 U.S. at 193.  However, there are no allegations in this matter that Defendants were acting in such a role and, thus, the exception does not apply.

relief brought against Defendants in their official capacities pursuant to the Rehabilitation Act for lack of subject matter jurisdiction.

At the same time, the Supreme Court's reasoning in *Lane* "supports the view that injunctive relief is available against the sovereign under" the "'program or activity' language of the Rehabilitation Act."  *See American Council of the Blind v. Paulson,* 463 F. Supp. 2d 51, 57-58 (D.D.C. 2006) (holding that the Department of the Treasury discriminated in a "program or activity" under § 504(a) by failing to design and issue paper currency that is distinguishable to blind and visually impaired people).  Citing the *Lane* Court's discussion of the Rehabilitation Act's "'clear waiver' of sovereign immunity for claims of attorney's fees," the *Paulson* court reasoned, "there would be no purpose in crafting a provision allowing attorney fees unless the statute contemplates awards of declaratory and injunctive relief."  *Id.* at 58.

Here, Plaintiff seeks not only monetary damages, but also reinstatement to the employment program at his facility.  Amended Complaint, docket #47 at 24.  Plaintiff's request for reinstatement is a form of prospective injunctive relief.  *See Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1232-33 (10th Cir. 2004).  Thus, Plaintiff's request for injunctive relief brought against Defendants in their official capacities pursuant to § 504 of the Rehabilitation Act is not barred by the doctrine of sovereign immunity.

## II.    Exhaustion of Remedies

Defendants further argue that Plaintiff's claims should be dismissed because Plaintiff has failed to exhaust his administrative remedies.  The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust available administrative remedies before suing over prison conditions.  *See* 42 U.S.C. § 1997e(a); *see also Booth v. Churner*, 532 U.S. 731, 733-34 (2001).  The Supreme Court

has determined "exhaustion is mandatory under the PLRA" and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).  The exhaustion of administrative remedies need not be pleaded in the complaint, but must be raised as an affirmative defense. *Id.* at 215.  The rules governing the process for fulfilling the administrative remedy obligation are not articulated by the PLRA but are defined by the respective prison grievance process.  *Id*. at 217.  In order to "properly exhaust" in satisfaction of the PLRA requirement, the plaintiff prisoner must comply with prison grievance procedures.  *Id*. at 218.

The Federal Bureau of Prisons ("BOP") provides inmates with administrative remedies pursuant to a grievance process which is codified at 28 C.F.R. § 542.10 *et seq*.  The procedures require that an inmate first file for an informal resolution.  If the inmate is not satisfied with the result, he must submit a request to the Warden using the appropriate form (BP-9).  28 C.F.R. § 542.14.  If the inmate is still not satisfied, the inmate must appeal his complaint to the appropriate Regional Director using a BP-10 form.  28 C.F.R. § 542.15.  For the final step in the BOP's procedures, the inmate must submit a BP-11 appeal form to the Office of the General Counsel in Washington D.C.  *Id.*

Defendants do not dispute that Plaintiff exhausted all of the administrative remedies made available by the BOP; however, citing 28 C.F.R. § 39.170(d), Defendants claim Plaintiff also must exhaust the required remedies established by the Department of Justice (DOJ) for complaints alleging disability discrimination.  (Docket #49 at 3.)  Defendants rely on a district court case from the Southern District of New York, which holds that a state inmate is required to exhaust all administrative remedies that an agency makes available including those remedies established by the DOJ.  *See William G. v. Pataki*, 2005 WL 1949509, at *6 (S.D.N.Y. Aug. 12, 2005.)

12

To the extent that Defendants raise this defense in response to Plaintiff's purported employment claims, requiring exhaustion of the EEO/DOJ's remedies in addition to those of the prison system is not supported by any controlling authority in this circuit, and such reasoning appears to be contradictory to the Tenth Circuit's conclusions in *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991); *see also White v. State of Colo.*, 82 F.3d 364, 367 (10th Cir. 1996) (stating the ADA and Rehabilitation Act do not apply to issues of prison employment).   In *Williams* and *White*, the Tenth Circuit held there is no employment relationship between an inmate and his prison facility; therefore, prisoners may not bring statutory employment discrimination claims against their facilities. *Id.* It follows logically, then, that prisoners in the Tenth Circuit need not exhaust any employment-related remedial requirements.

However, 28 C.F.R. § 39.170 provides complaint procedures for "*all* allegations of discrimination on the basis of handicap in programs or activities conducted by the agency."   28 C.F.R. §39.170(a) (emphasis added).   Notably, the regulation states in pertinent part: "[a]ny person who believes that he or she has been subjected to discrimination prohibited by this part *may* by him or herself or by his or her authorized representative file a complaint with the Official." *Id.* at § 39.170(d)(1)(i) (emphasis added).   Thus, the plain language of the regulation itself does not require exhaustion. *See Franco-Gonzales v. Holder*, 767 F. Supp. 3d 1034, 1046 n.5 (C.D. Cal. 2010).   The only requirement stated in the regulation that may be relevant to the inquiry here is that a federal inmate must exhaust the BOP administrative remedy procedure before filing a complaint with the DOJ. *See* 28 C.F.R. § 39.170(d)(1)(ii).   Therefore, it is arguable that Plaintiff is not required, pursuant to this regulation, to file a complaint with the DOJ.

However, Defendants argue that the PLRA itself requires federal inmates alleging disability

13

discrimination to exhaust the DOJ's administrative remedy.  The pertinent section of the PLRA states: "No action shall be brought with respect to prison conditions under section 1983 of this title, *or any other Federal law*, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted." 42 U.S.C. § 1997e(a) (emphasis added).  By its plain language, the statute requires prisoners bringing federal ADA or Rehabilitation Act claims challenging prison conditions to exhaust any remedy that is made available to that inmate.  *Id.*  Certainly, while the DOJ administrative remedy is not required, it has been made available to persons alleging disability discrimination in programs or activities conducted by the agency.  *See Haley v. Haynes*, No. CV210-122, 2012 WL 112946, at *1 (S.D. Ga. Jan. 12, 2012).  As such, this Court agrees with Defendants that Plaintiff is required by the PLRA to exhaust the DOJ remedy for any disability discrimination claims.

Section 39.170(d)(3) provides, "complaints by inmates of Federal penal institutions shall be filed within 180 days of the final administrative decision of the Bureau of Prisons under 28 CFR part 542." 28 C.F.R. § 39.170(d)(3).  The record reflects that Plaintiff's final administrative decision was issued December 16, 2010.  Docket #47 at 42.  While the Plaintiff argues he exhausted the BOP remedies required pursuant to Section 542, he mentions nothing in his response concerning whether he  filed a complaint with the DOJ, or whether such remedy was made available to him.  Therefore, the Court must recommend that, to the extent they are not dismissed for lack of subject matter jurisdiction, the Plaintiff's ADA and Rehabilitation Act claims be dismissed for failure to exhaust administrative remedies.

## III.    Failure to State a Claim

To the extent that the District Court finds Plaintiff has, in fact, exhausted his Rehabilitation

Act claim for injunctive relief against Defendants, this Court recommends denial in part of the Defendants' motion to dismiss such claim.   "The Rehabilitation Act prohibits the federal government and federally funded programs from discriminating against individuals on the basis of a disability; it creates a private right of action for disabled individuals, including federal employees who claim disability discrimination in connection with their employment." *Dettlerline v. Salazar*, 320 F. App'x 853, 856 (10th Cir. 2009) (citing 29 U.S.C. § 794a and *McGeshick v. Principi*, 357 F.3d 1146, 1149 (10th Cir. 2004)).   As set forth above, the Plaintiff is not an employee under the Rehabilitation Act because 'his relationship with the Bureau of Prisons, and therefore, with the defendants, arises out of his status as an inmate, not an employee.'" *Williams*, 926 F.2d at 997 (10th Cir. 1991); *see also White*, 82 F.3d at 367 (stating the ADA and Rehabilitation Act do not apply to issues of prison employment).   Because Plaintiff does not have an employment relationship with Defendants, he cannot pursue claims for employment discrimination under the Rehabilitation Act. *Williams*, 926 F.2d at 997.

However, construing Plaintiff's Amended Complaint liberally as I must, I acknowledge that the Plaintiff plausibly asserts a claim pursuant to Section 504 of the Rehabilitation Act for discrimination in public accommodations.   That section provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).   In fact, Defendants concede that "UNICOR is a federal program or activity designed to provide work and training programs for federal inmates that is organizationally within the Bureau of Prisons," and therefore, is a "program or activity" covered by the Rehabilitation Act.

15

Docket #63 at 2-3.  Defendants, however, construe the Second Amended Complaint as brought against the Defendants only in their official capacities (docket #49, n. 3).  But, as set forth above and construing the pleading liberally, it is unclear in what capacities Defendants are sued and, thus, possible that Plaintiff brings claims against the Defendants in both their official and individual capacities.  *See, e.g.,* docket #47 at 13-18.  Nevertheless, the Tenth Circuit has upheld a district court's finding that the Rehabilitation Act does not permit actions against persons in their individual capacities.  *Moore*, 242 F. 3d 389, 2000 WL 1838274, at *1-2 (citing *Hiler v. Brown*, 177 F.3d 542, 545-46 (6th Cir. 1999)).  Therefore, to the extent that the Plaintiff intends to bring his statutory claims against the Defendants in their individual capacities, this Court recommends that the claims be dismissed.

Continuing with a liberal construction, however, the Court finds the facts underlying Plaintiff's discrimination claim may support a claim brought pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) for a constitutional violation.[6]  *See Williams*, 926 F.2d at 998 (finding sufficient a federal prisoner's claim pursuant to the Fifth Amendment's equal protection clause that he suffered discrimination upon termination from his job allegedly because of a disability).  Although Plaintiff has "no right to employment in the prison or to any particular job assignment, prison officials cannot discriminate against him on the basis of his age, race, or handicap, in choosing whether to assign him a job or in choosing what job to assign him."  *Id*.  In his Second Amended Complaint, Plaintiff alleges he has a disability in his right hand that "slowed him down" in using a "tag gun."  Docket #47 at 3.  According to Plaintiff, a formerly named

---

[6]In fact, the Plaintiff asserts jurisdiction pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), in addition to the Rehabilitation Act and the ADA.  Docket #47 at 3.

Defendant, Mr. Shortner, was told by his boss and another formerly named Defendant, Mr. Hendricks, to take the Plaintiff "off" of the tag gun because he was not "keeping up." *Id.* Plaintiff claims Mr. Shortner told him that he would call him back to work as soon as another opening became available, but he never did. *Id.* Plaintiff asserts that the currently named Defendants "are directly responsible for the actions of their employees here at FCI Englewood." *Id.* The Court finds the Plaintiff's allegations may plausibly state a *Bivens* claim for deprivation of the right of equal protection secured by the Fifth Amendment.

The Court acknowledges Defendant's argument that Plaintiff's amended claims against Lappin and Cantrell, construed as constitutional claims, would be likely dismissed for failure to allege personal participation. Docket #49, n. 3. However, as set forth in the Procedural History above, Plaintiff originally brought this lawsuit against Shortner and Hendricks, then following the conversation concerning "proper" Defendants held at the Scheduling Conference, Plaintiff amended his Complaint to name only Cantrell and Lappin as "directors" of the governmental entities. To correct a possible misunderstanding by the Plaintiff concerning which persons should be properly named as Defendants in this case, the Court recommends that the District Court allow the Plaintiff an opportunity to amend his Second Amended Complaint once again to name all proper parties in the case. *See Hall*, 935 F.2d at 1110 ("if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.").

For the foregoing reasons, this Court respectfully recommends that any claims brought pursuant to the Rehabilitation Act against Defendants in their individual capacities should be

dismissed for failure to state a claim upon which relief may be granted.  However, the Court also recommends that  Plaintiff be allowed to amend the operative pleading to assert, and name the proper defendants for, a claim alleging a violation of equal protection secured by the Fifth Amendment.

## **<u>CONCLUSION</u>**

Pursuant to the statute, the Plaintiff is barred from bringing claims under the ADA against the Defendants in their individual and official capacities.  Likewise, Plaintiff may not bring claims pursuant to the Rehabilitation Act against the Defendants in their individual capacities, may not seek monetary damages against Defendants in their official capacities, and may not bring an employment claim under that statute.  Also, while the Plaintiff is not barred by the doctrine of sovereign immunity from seeking prospective injunctive relief for his Rehabilitation Act public accommodation claim against the named Defendants in their official capacities, the Plaintiff has failed to exhaust the administrative remedies available for his Rehabilitation Act claim.  Therefore, the Court recommends that Defendants' motion to dismiss be granted in part and denied in part as to the foregoing, and Plaintiff's claims, as stated in the Second Amended Complaint, be dismissed.

At the same time, this Court construes the Second Amended Complaint to plausibly allege that Plaintiff's Fifth Amendment right to equal protection was violated and, thus, recommends that the District Court allow the Plaintiff to amend the pleading to assert, and name the proper defendants for, such claim.

Accordingly, this Court respectfully RECOMMENDS that Defendant's Motion to Dismiss [<u>filed November 2, 2011; docket #49</u>] be **GRANTED in part and DENIED in part** as set forth

herein.

Dated at Denver, Colorado, this 9th day of February, 2012.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge